## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**ZACCHAEUS BARNES,**

    *Plaintiff,*

    v.

**CLARITY SERVICES, INC.,**

    *Defendant.*

Case Number: 8:26-cv-1199

**JURY TRIAL DEMANDED**

## COMPLAINT AND JURY TRIAL DEMAND

COMES NOW the Plaintiff, **Zacchaeus Barnes** ("**Mr. Barnes**"), by and through his attorneys, Seraph Legal, P.A., and complains of the Defendant, **Clarity Services, Inc.** ("**Clarity**" or "**Defendant**"), stating as follows:

### PRELIMINARY STATEMENT

1.    This is an action brought by Mr. Barnes against Clarity for violations of the *Fair Credit Reporting Act*, 15 U.S.C. § 1681, *et seq.* ("**FCRA**").

### JURISDICTION AND VENUE

2.    Subject matter jurisdiction arises under the FCRA, 15 U.S.C. § 1681p, and 28 U.S.C. § 1331.

3.    Clarity is subject to the provisions of the FCRA and is subject to the jurisdiction of this Court pursuant to Fed. R. Civ. P. 4(k) and § 48.193, Fla. Stat.

4.    Venue is proper in the Middle District of Florida pursuant to 28 U.S.C. § 1391(b)(2), because the acts complained of were committed and /or caused by

Clarity within Hillsborough County, Florida, which is in the Middle District of Florida.

## PARTIES

### Mr. Barnes

5.  **Mr. Barnes** is a natural person residing in the City of Valrico, Hillsborough County, Florida.

6.  Mr. Barnes is a *Consumer* as defined by the FCRA, 15 U.S.C. § 1681a(c).

### Clarity

7.  **Clarity** is a Delaware corporation, with a principal business address at 475 Anton Boulevard, Costa Mesa, CA 92626.

8.  Clarity is registered to conduct business in the State of Florida, where its Registered Agent is CT Corporation System, 1200 South Pine Island Rd., Plantation, FL 33324.

9.  Clarity is a nationwide *Consumer Reporting Agency* ("CRA") within the meaning of the FCRA, 15 U.S.C. § 1681a(f), in that it, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and uses various means of interstate commerce for the purpose of preparing or furnishing consumer reports, specifically including mail, internet, and/or telephone communications.

## FACTUAL ALLEGATIONS

### Clarity's Inaccurate Consumer Reports Regarding Mr. Barnes

10.     Around November 2022, Clarity began maintaining a credit file on Mr. Barnes.

11.     At some point after this, Clarity started incorporating credit information belonging to a separate, unrelated consumer into Mr. Barnes' file.

12.     Clarity falsely associated information apparently belonging to Jesus Vega, Jr. ("Vega"), an unrelated individual who appears to live in Lakeland, Florida, into its credit file regarding Mr. Barnes.

13.     Clarity incorporated a significant amount of information likely belonging to Vega into its file on Mr. Barnes: including the name Jose Vega, Jr., a date of birth belonging to Vega, and a home address in Lakeland, Florida. *Id.*

14.     Clarity's file on Mr. Barnes is an example of a *mixed file*.

15.     A mixed file is a credit file that contains information concerning two or more persons rather than the one person about whom it should relate.

16.     Clarity caters its consumer reports to subprime lenders, many of whom utilize the personal identifying information maintained by Clarity to verify the identity of a potential borrower, as the applications are submitted online.

17.     Clarity also incorporates data such as bank accounts and employment information into risk scores that it provides to certain end-users upon request.

18.     Thus, Clarity's inclusion of personal identifying information belonging to another consumer has a severe, negative effect on a consumer's ability to obtain credit.

19.     Clarity knows that its automated systems often erroneously match tradeline information to an incorrect consumer's credit file with minimal commonalities.

20.     Despite such knowledge, Clarity has declined to correct its systems, which often appear to match a consumer's data with the information in its files based on a single data point instead of utilizing all of the information provided to it.

21.     Clarity, a CRA, has a legal obligation to use reasonable procedures to assure the maximum possible accuracy of its consumer reports. 15 U.S.C. § 1581e(b).

22.     Despite its obligation, on December 11, 2025, Clarity sold a consumer report regarding Mr. Barnes to Experian in connection with an application for an auto loan initiated by another consumer, presumably Vega. *Id.*

23.     Clarity had no reason to believe it had permissible purpose to sell a report on Mr. Barnes to an auto lender who had requested a report concerning Jesus Vega Jr. of Lakeland, Florida, especially since the auto lender also provided Vega's date of birth and Social Security number, both of which did not match Mr. Barnes'.

24.     Despite lacking any permissible purpose whatsoever, Clarity still sold the report on Mr. Barnes to Wells Fargo.

25. Upon learning that Clarity had sold his information to a company which did not ask for a report on him, nor did it have legal purpose to obtain it, Mr. Barnes became very concerned and emotionally distraught.

26. Clarity also sold consumer reports containing a mix of Mr. Barnes' information along with that of Vega's, to Mr. Barnes' potential lenders, including in response to an application submitted by Mr. Barnes to Perpay.

27. Beyond the systemic problems Clarity's automated systems routinely encounter in associating different consumers with each other, Clarity programs its systems to acquire and report as much information as possible, with little regard to the quality of the data, or if the data could even possibly be true.

28. As a prime example, Clarity reported that Mr. Barnes has *three different* dates of birth, information which could not possibly be true.

29. Another example of Clarity's incorporation of logically impossible, obviously false information is that Clarity incorporated data stating that Mr. Barnes has *two* driver's licenses at the same time, as follows:

| Driver's License Number and State | First Reported (Date/Time/Tracking #) | Last Reported (Date/Time/Tracking #) | # of Times Reported |
|---|---|---|---|
| XXXX2071 AL | 4/13/2023 10:32:57 am EDT e4gg6wbm5s | 11/26/2025 4:58:49 pm EST 9e8d5s8c82 | 15 |
| XXXXXXXXX4460 FL | 6/8/2023 11:54:39 pm EDT bt7qp7rg2x | 5/2/2025 3:34:23 pm EDT de2r6pf35s | 7 |

30. Compounding the issue, when Mr. Barnes requested his Clarity credit file disclosure on April 16, 2026, Clarity provided Mr. Barnes with only a redacted version of it.

31.    Clarity redacted all but the last four digits of the two driver's licenses Mr. Barnes supposedly held, simultaneously, in its credit disclosure to Mr. Barnes, which was supposed to contain the full, unredacted contents of his file.

32.    Clarity also redacted the account number of the credit account in Clarity's file on Mr. Barnes, even though Clarity includes the full account numbers in consumer reports it sells to creditors and potential creditors.

33.    Nothing in the FCRA allowed Clarity to redact this information, but it did so anyway.

34.    Another example of Clarity's incorporation of logically impossible, obviously false information is that Clarity incorporated data stating that Mr. Barnes resided in three geographically distinct locations across two different states simultaneously during a single 30-day window in late 2025:

- **Ranson, WV:** Reported as an active residence first reported on November 26, 2025 and last reported on December 11, 2025;

- **Lakeland, FL:** First and last reported as an active residence on December 11, 2025; and

- **Valrico, FL:** Last reported as an active residence on December 17, 2025.

35.    It is a physical impossibility for a consumer to maintain a primary credit footprint in Ranson, West Virginia, and multiple cities in Florida simultaneously.

36.     A CRA following reasonable procedures designed to ensure maximum possible accuracy of reports sold would flag a situation where a consumer is reported at two different "Home Addresses" simultaneously, but Clarity failed to do so.

37.     Clarity also incorporated obviously false, junk data regarding residential history into Mr. Barnes credit file. For example, Clarity incorporated two iterations of the same address on "POWDER RIDGE DR" and three different iterations of an address on "JEFFREY DR."

38.     Some of the iterations of these addresses are obviously incorrect or improperly formatted, but Clarity incorporated these multiple address iterations as separate, factual residential addresses where Mr. Barnes resided.

39.     The sheer volume of reported addresses (spanning multiple states and dozens of iterations) creates a false and misleading profile of Mr. Barnes, suggesting to potential creditors that Plaintiff is either highly transient or a victim/perpetrator of identity fraud.

40.     Clarity's reporting of Mr. Barnes' "Months at Address" data is mathematically impossible and facially absurd, proving a lack of even the most rudimentary quality control filters.

41.     For example, according to the "Months at Address" section of the report, Mr. Barnes' residency duration fluctuated by decades within mere days:

- On June 8, 2023, Clarity incorporated reporting that Mr. Barnes had 12 months of history at his address;

- On July 17, 2023—less than six weeks later—Clarity incorporated data that Mr. Barnes had 60 months of history at his address;

- On July 20, 2023—just three days after the previous report—Clarity incorporated reporting that Mr. Barnes had 181 months of history at his address.

42. In a span of approximately six weeks, Clarity's reporting suggests Mr. Barnes gained nearly 15 years in duration of residency, which is a clear temporal impossibility.

43. Furthermore, Clarity incorporated data showing Mr. Barnes also had a regressive residency timeline that defies the linear passage of time. For instance, on May 2, 2025, Clarity incorporated reporting that Mr. Barnes had lived at his current address for 132 months. Then, on November 26, 2025, Clarity incorporated data that indicated Mr. Barnes had lived at his current address for only 12 months. Even assuming Mr. Barnes had moved after May 2, 2025, it would be impossible for him to gain 12 months of residency in just six months.

44. Clarity's incorporation of data indicating wild fluctuations, overlapping, and contradictory residential timelines create a facially inaccurate and frankly nonsensical residential history that violates the mandate of 15 U.S.C. § 1681e(b) and creates the negative and false impression that Mr. Barnes moves residences frequently, or resides at multiple residences simultaneously.

45. Clarity also incorporated reporting regarding Mr. Barnes' employers that contained obvious errors, such as "CONDUENC" and "CONDUENT BUSSINES."

The fact Clarity's systems are not designed to detect even flagrant and obvious errors, but rather designed to simply dump the data directly into a consumer's credit file, further illustrates a lack of reasonable procedures.

46.     Clarity incorporated what appears to be three different iterations of the same employer's name" "CONDUENC," "CONDUENT," and "CONDUENT BUSSINES."

47.     Clarity's reporting of Mr. Barnes' "Months at Employer" contains patently false and logically irreconcilable data points that defy the linear passage of time.

48.     For example, on July 17, 2023, Clarity incorporated reporting that Mr. Barnes had been employed at his current employer for "25 Months." Then, on July 20, 2023, just 72 hours later, Clarity incorporated reporting indicating Mr. Barnes had spent only "37 Months" at his employer. Yet, on that same day, July 20, 2023, Clarity also incorporated reporting that Mr. Barnes had "0 Months" at his employer. It is physically impossible and patently absurd that an individual's employment duration could fluctuate between 0 months, 25 months, and 37 months all within a 72-hour timeframe.

49.     Additionally, on April 3, 2023, Clarity incorporated data indicating that Mr. Barnes had both "0 Months" at his employer as well as "12 Months" at his employer. Again, these contradictory data points are patently absurd and obviously false.

50.     This pattern of reporting creates a false impression of job-hopping or instability. Many subprime lenders – the type of lenders Clarity services almost exclusively – carefully examine the length of time a consumer has been at the same employer, as income stability is a key factor analyzed in their underwriting decisions.

51.     Additionally, a credit report indicating "0 Months" on the job will frequently impact a consumer's ability to be approved for credit, as a short time at an employer is viewed negatively in almost every credit analysis.

52.     Clarity's reporting of Mr. Barnes' "Net Monthly Income" also contains variations so extreme and mathematically improbable that they demonstrate a total absence of reasonable procedures designed to ensure maximum possible accuracy of reports sold.

53.     For instance, on April 3, 2023, Clarity incorporated reporting of wildly varying income figures within a 12-minute window. At 1:31:36 PM, Clarity incorporated reporting that Mr. Barnes' net monthly income was $3,300. Then at 1:43:00 PM, Clarity incorporated reporting that Mr. Barnes' net monthly income was $330,000 (an annual net salary of nearly $4 million). Incorporating data indicating Mr. Barnes became a multi-millionaire in a 12-minute window of time fundamentally undermines the integrity of Clarity's credit file on Mr. Barnes.

54.     The majority of lenders to whom Clarity sells reports thoroughly examine a consumer's employment history and income data to verify the consumer has a history of reliable employment and stable income to ensure the consumer is able to repay any funds the lender advances.

55.     Consequently, Clarity's inclusion of demonstrably false information about Mr. Barnes' income and employment had a significant negative impact on Mr. Barnes' ability to obtain new credit.

56.     Clarity incorporated reporting indicating that Mr. Barnes has been paid "MONTHLY." However, at no point was Mr. Barnes paid once a month.  *Id*.

57.     Further, as Clarity's credit scoring system heavily considers a consumer's income stability, the presence of information suggesting Mr. Barnes was paid only monthly is heavily detrimental to him, since most creditors obtaining his report from Clarity require payment on a bi-weekly schedule.

58.     Records from Clarity show it sold over 50 reports regarding Mr. Barnes in the past four years.

59.     Each of these reports contained false and preposterous information about Mr. Barnes' employment history, housing status, income, and more.

60.     Many of these reports also contained data that belonged to an unrelated individual.

61.     The FCRA is clear in its requirement that Clarity, as a CRA, is required to prepare accurate reports:

> **Accuracy of Report**.   Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates.  15 U.S.C. §1681e(b).

62.     Clarity was required to follow reasonable procedures to assure maximum possible accuracy of the information concerning Mr. Barnes.

63.     Clarity was thus aware that when it sold reports on Mr. Barnes in the last four years that, under a best-case scenario, it was selling data and other information it knew it had gathered without regard to accuracy or completeness.

64.     As a result of the Defendant's actions, Mr. Barnes has suffered damages, including wasted time trying to figure out what the information in his Clarity file means and how it got there, lost financial opportunities, loss of credit, lower credit scores, significant emotional distress and aggravation, and damage to his reputation.

65.     As the aforementioned inaccuracies persist as of the date of this filing, Mr. Barnes hereby demands Clarity, upon service of this suit, conduct an investigation and correct his credit file.

66.     Mr. Barnes has hired the undersigned law firm to represent him in this matter and has assigned the firm his right to fees and costs.

## COUNT I
## CLARITY'S WILLFUL VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681e(b)

67.     Mr. Barnes adopts and incorporates paragraphs 1 – 66 as if fully stated herein.

68.     Clarity willfully violated **15 U.S.C. § 1681e(b)** when it failed to follow reasonable procedures to assure maximum possible accuracy of the consumer reports sold regarding Mr. Barnes, as reasonable procedures would not have resulted in

Clarity's inclusion of information concerning another individual into Mr. Barnes' reports, nor would reasonable procedures have resulted in Clarity's sale of reports containing erroneous and preposterous information about Mr. Barnes' income, length of residence, employment, and more.

69.     Clarity has been sued on numerous occasions for very similar conduct and knows that its procedures for ensuring accuracy of reports are flawed.

70.     Clarity's conduct was thus willful or done with a reckless disregard for Mr. Barnes' rights under the FCRA.

71.     As a result of its conduct, Clarity is liable to Mr. Barnes pursuant to the FCRA for the greater of Mr. Barnes' actual damages or statutory damages of up to $1,000 for *each occurrence*, punitive damages, reasonable attorneys' fees, and costs, per 15 U.S.C. § 1681n.

**WHEREFORE**, Mr. Barnes respectfully requests this Honorable Court enter judgment against Clarity for:

    a.    The greater of Mr. Barnes' actual damages and statutory damages of $1,000 per incident pursuant to 15 U.S.C. § 1681n(a)(1)(A);

    b.    Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

    c.    Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3); and,

    d.    Such other relief that this Court deems just and proper.

## COUNT II
## CLARITY'S NEGLIGENT VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681e(b)
### (Pled in the Alternative to Count I)

72.    Mr. Barnes adopts and incorporates paragraphs 1 – 66 as if fully stated herein, and pleads this count strictly in the alternative to Count I.

73.    Clarity owed Mr. Barnes a legal duty to utilize reasonable procedures to assure the maximum possible accuracy of its consumer reports regarding Mr. Barnes.

74.    Clarity breached its duty when it sold numerous consumer reports incorporating information concerning another individual into Mr. Barnes' report and which also contained erroneous and preposterous information about Mr. Barnes' income, length of residence, employment, and more.

75.    Clarity's breach amounts to a negligent violation of **15 U.S.C. § 1681e(b)**, and Mr. Barnes is entitled to his actual damages, attorneys' fees, and costs, pursuant to 15 U.S.C. § 1681o.

**WHEREFORE**, Mr. Barnes respectfully requests this Honorable Court enter judgment against Clarity for:

a.    Actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

b.    Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681o(a)(2); and

c.    Such other relief that this Court deems just and proper.

## COUNT III
## CLARITY'S WILLFUL VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681g(a)(1)

76.     Mr. Barnes adopts and incorporates Paragraphs 1 – 66 as if fully restated herein.

77.     Clarity violated 15 U.S.C. § 1681g(a)(1) when it failed to clearly and accurately disclose all the information it had in its file by providing Mr. Barnes with a redacted version of his consumer disclosure, including information which became meaningless when redacted, and which was not redacted when sold to Mr. Barnes' creditors.

78.     Clarity has been notified through litigation that its disclosures to consumers fail to properly disclose this information.

79.     Clarity's conduct was thus willful and intentional, or, alternatively, was performed with reckless disregard for its duties under the FCRA to provide clear and accurate disclosures.

80.     As a result of its conduct, Clarity is liable to Mr. Barnes pursuant to the FCRA for the greater of Mr. Barnes' actual damages or statutory damages of up to $1,000 for *each occurrence*, punitive damages, reasonable attorneys' fees, and costs, per 15 U.S.C. § 1681n.

**WHEREFORE**, Mr. Barnes respectfully requests this Honorable Court enter judgment against Clarity for:

a.  The greater of Mr. Barnes' actual damages and statutory damages of $1,000 per incident pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b.  Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c.  Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3); and,

d.  Such other relief that this Court deems just and proper.

**COUNT IV**
**CLARITY'S NEGLIGENT VIOLATIONS OF THE FCRA,**
**15 U.S.C. § 1681g(a)(1)**
**(Pled in the alternative to Count III)**

81.  Mr. Barnes adopts and incorporates Paragraphs 1 – 66 as if fully restated herein and strictly pled in the alternative to Count III.

82.  Clarity owed Mr. Barnes a legal duty to accurately disclose all the information in his credit file upon his request.

83.  Clarity breached this duty when it only provided Mr. Barnes with a redacted version of his consumer disclosure, including information which became meaningless when redacted, and which was not redacted when sold to Mr. Barnes' creditors.

84.  Clarity's breach amounts to a negligent violation of **15 U.S.C. § 1681g(a)(1)**, and Mr. Barnes is entitled to his actual damages, attorneys' fees, and costs pursuant to 15 U.S.C. § 1681o.

**WHEREFORE**, Mr. Barnes respectfully requests this Honorable Court enter judgment against Clarity for:

a.    Mr. Barnes' actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

b.    Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681o(a)(2); and,

c.    Such other relief that this Court deems just and proper.

## COUNT V
## CLARITY'S WILLFUL VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681b(a)(3)

85.    Mr. Barnes adopts and incorporates paragraphs 1 - 66 as if fully stated herein.

86.    Clarity violated **15 U.S.C. § 1681b(a)(3)** when it furnished at least one report to Wells Fargo about Mr. Barnes in response to a request for a report on an unrelated individual with a different name, date of birth, and Social Security number.

87.    Clarity had no reason to believe it had permissible purpose to furnish this report and there are essentially no commonalities between the consumer who Wells Fargo requested report on and Mr. Barnes.

88.    Clarity knows, through complaints from other consumers, that its automated systems often provide data about unrelated consumers in response to requests for reports by lenders.

89.    Clarity is thus liable to Mr. Barnes, pursuant to 15 U.S.C. § 1681n, for the greater of Mr. Barnes' actual damages and statutory damages of up to $1,000 for each occurrence, as well as for punitive damages, reasonable attorneys' fees, and costs.

**WHEREFORE,** Mr. Barnes respectfully requests this Honorable Court enter judgment against Clarity for:

a.   The greater of Mr. Barnes' actual damages or statutory damages of $1,000 per violation, pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b.   Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c.   Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3); and,

d.   Such other relief that this Court deems just and proper.

## COUNT VI
## CLARITY'S NEGLIGENT VIOLATIONS OF THE FCRA,
## 15 U.S.C. § 1681b(a)(3)
## (Pled in the Alternative to Count V)

90.   Mr. Barnes adopts and incorporates paragraphs 1 - 66 as if fully stated herein and pleads this count strictly in the alternative to Count V.

91.   Clarity responded to at least one request from Wells Fargo to provide a report on an individual not related to Mr. Barnes by providing a consumer report regarding Mr. Barnes.

92.   Thus, Clarity negligently violated **15 U.S.C. § 1681b(a)(3)** when it furnished at least one report to Wells Fargo about Mr. Barnes in response to a request for a report on an unrelated individual with a different name, date of birth, and Social Security number.

93.   As such, Mr. Barnes is entitled to his actual damages.

**WHEREFORE**, Mr. Barnes respectfully requests this Honorable Court enter judgment against Clarity for:

a.      Mr. Barnes' actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

b.      Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681o(a)(2); and,

c.      Such other relief that this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all issues so triable.

Respectfully submitted on April 24, 2026, by:

**SERAPH LEGAL, P.A.**

*/s/ Bryan J. Geiger*
Bryan J. Geiger, Esq.
FBN: 119168
3505 E. Frontage Rd., Ste. 145
Tampa, FL 33607
P: (813) 321-2348
Bgeiger@seraphlegal.com
Service@seraphlegal.com
*Lead counsel for Plaintiff*
